UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LOCAL 377 CHAUFFEURS, | ) | CASE NO. 4:10CV2433 |
| TEAMSTERS, WAREHOUSEMEN & | ) | |
| HELPERS UNION, | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| SHELLY & SANDS, INC., | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

Before the Court are fully briefed cross-motions for summary judgment.[1] For the

reasons set forth herein, defendant's motion (Doc. No. 17[2]) is **GRANTED**; plaintiff's motion

(Doc. No. 19[3]) is **DENIED**.

## I. BACKGROUND

Plaintiff Chauffeurs, Teamsters, Warehousemen & Helpers, Local Union No. 377

("plaintiff" or "Local 377") is a labor organization affiliated with the International Brotherhood

of Teamsters ("Teamsters"). Local 377 was the collective bargaining representative for certain

employees of defendant Shelly & Sands, Inc. ("defendant" or "Shelly & Sands"). (Lesicko Decl.

---

[1] On August 3, 2012, defendant filed a notice of supplemental authority which the Court has also considered. (Doc. No. 27.) The Court concludes that the supplemental authority does not modify the reasoning herein.

[2] Plaintiff filed an opposition brief (Doc. No. 20) and defendant filed a reply (Doc. No. 22).

[3] Defendant filed an opposition brief (Doc. No. 21) and plaintiff filed a reply (Doc. No. 23).

¶ 2.)[4] Shelly & Sands provides asphalt and concrete paving, bridgework, excavating, landfill work, and construction services. (Leffler Decl. ¶ 2.)[5]

In 2006, Shelly & Sands bid on work to renovate an existing landfill at the Power Plant in Brilliant, Ohio, which is co-owned by American Electric Power and Buckeye Power (collectively, "the owners"). The owners required any contractor bidding on the job to enter into a National Maintenance Agreement ("NMA") with the Teamsters.[6] (Leffler Decl. ¶ 3.) On August 9, 2006, Roy Heskett, Assistant Secretary of Shelly & Sands, signed the NMA on behalf of Shelly & Sands, and James Hoffa, the Teamsters' President, signed on behalf of the Teamsters. (Leffler Decl. ¶ 4 and Ex. 1; Lesicko Decl. ¶ 4.)[7] Thereafter, pursuant to the terms and conditions of the NMA, Shelly & Sands employed bargaining unit members represented by Local 377. (Lesicko Decl. ¶ 6.) Shelly & Sands completed work on the Power Plant in December 2008. (Leffler Decl. ¶ 5.)

In July 2009, Shelly & Sands used the National Maintenance Agreement Policy Committee's ("NMAPC") online termination system to provide written notice of its intent to terminate the NMA with the Teamsters. (Leffler Decl. ¶ 6 and Ex. 2.) The NMA, under its terms,

---

[4] John Lesicko is the Secretary-Treasurer and Principal Officer of Local 377 and a full-time employee of Local 377. (Lesicko Decl. ¶ 2.)

[5] Andrew Leffler is the Assistant Vice President of Shelly & Sands. (Leffler Decl. ¶ 1.)

[6] Bidders were also required to execute NMAs with the Laborers International Union of North America ("the Laborers") and the International Union of Operating Engineers ("the Operating Engineers"); however, these NMAs are not relevant to the instant dispute.

[7] A blank copy of the NMA is attached to the amended complaint as Ex. A. A copy of the signature page is attached to Leffler's Declaration as Ex. 1. It cannot be disputed that the NMA is between Shelly & Sands, as the "Employer," and the Teamsters, as "the Union." It also cannot be disputed that Local 377, although "affiliated" with the Teamsters, is not itself a signatory to the NMA.

"continue[d] in effect until terminated by ninety (90) days' written notice from either party to the other." (NMA, Art. XXIX.)[8]

By letter dated August 28, 2009, the NMAPC notified Shelly & Sands that, despite several invoices over many months, Shelly & Sands was delinquent in the payment of the administrative fees required by the NMA and, as a result, the NMA was terminated. (Lesicko Decl. ¶ 7 and Ex. B.) During a subsequent 2009 audit of Shelly & Sands' pension contributions under the NMA, the Teamsters' Central States Pension Fund ("Pension Fund") confirmed that Shelly & Sands' status as an NMA signatory was "terminated per NMA 08/28/09." (Leffler Decl. ¶ 7 and Ex. 3.)

On or about April 19, 2010, Local 377 filed a class action grievance against Shelly & Sands alleging, under Art. XXIII of the NMA, that Shelly & Sands had advised Eugene Kelson, Gary Young, and Shelley Garner that they could not continue to work for Shelly & Sands as Teamster members represented by Local 377 and that, if they wanted to continue to work for Shelly & Sands, they could join another labor union. (Lesicko Decl. ¶ 9 and Ex. C.)[9] By letter response dated April 26, 2010, Shelly & Sands took the position that, since it was no longer a party to the NMA and since the allegations raised in the grievance addressed conduct that occurred nine months after the termination of the NMA, it had no obligation to process the grievance. (Lesicko Decl. ¶ 10 and Ex. D.)

---

[8] Although addressed by neither party in their briefs, the email exchange that resulted from this online termination shows that "[t]he termination request has been DENIED by the Teamsters." (Doc. No. 17-1 at 6, capitalization in original.) When Leffler responded with an email asking why the termination request was being denied since "[t]he project requiring [Shelly & Sands'] enrollment is complete" (*id*. at 5), the only response was that one "Mr. Woodward" was in a conference call and would be "in contact." (*Id*.). There is no resolution of this particular dispute reflected in the record. Even so, as noted below, the NMA was later terminated due to Shelly & Sands' failure to stay current on administrative fees.

[9] Kelson, Young and Garner joined the Laborers in April 2010 and continued to work for Shelly & Sands. (Leffler Decl. ¶ 8.)

3

On May 17, 2010, Local 377 filed with the National Labor Relations Board ("the Board") an unfair labor practice charge against Shelly & Sands alleging that Shelly & Sands "made threats to and otherwise discriminated against members of Teamsters Local 377 in violation of Section[s] 8(a)(3) and 8(a)(5) of the [National Labor Relations] Act." (Leffler Decl. ¶ 9 and Ex. 4.)

On June 10, 2010, Shelly & Sands submitted to the Board signed and notarized affidavits from employees Kelson, Young, and Garner which stated that those individuals were not discriminated against, intimidated, harassed, or otherwise treated unfairly, and that they joined the Laborers voluntarily.[10] (Leffler Decl. ¶ 10 and Ex. 5.) The three employees declined to assist Local 377 in connection with the unfair labor practice charge purportedly filed on their behalf. (*Id.* and Ex. 6.) Local 377 withdrew the unfair labor practice charge with the Board's approval on June 25, 2010. (*Id.*, ¶ 11 and Ex. 7.)

On December 1, 2010, Local 377 filed the instant complaint to compel arbitration, asserting that its claim arises under the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 141, *et seq.* In its amended complaint, Local 377 asserts that Shelly & Sands is obligated to honor the terms and conditions of the NMA because, following the August 2009 termination of the NMA, Shelly & Sands continued to employ Local 377 members, to pay wages, and to make contributions to the designated health and welfare and pension funds. (Doc. No. 4, ¶ 11.)

---

[10] Similar affidavits have been filed here. (*See* Doc. No. 17-1.)

## II. DISCUSSION

**A.      Summary Judgment Standard**

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An opposing party may not rely merely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina College v. Russell*, 499 U.S. 225 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether

5

reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).  The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

**B.      Analysis**

Plaintiff does not dispute that the NMA was terminated in August 2009. However, in its motion for summary judgment, plaintiff argues that, by its behavior following the August 2009 termination of the NMA, Shelly & Sands indicated its intent to continue to be bound by the NMA; specifically, Shelly & Sands continued to employ Local 377 members on construction jobs in Youngstown, Ohio, continued to pay wages to those members pursuant to the NMA, continued to make contributions to the designated health and welfare fund pursuant to the NMA, and continued to make contributions to the Pension Fund pursuant to the NMA. (Lesicko Decl. ¶ 8; Am. Compl. ¶ 8.) As a result, in plaintiff's view, Shelly & Sands had the continuing contractual obligation to process the class action grievance.

6

In its counter-motion for summary judgment, Shelly & Sands argues that the amended complaint should be dismissed because Local 377 is not a signatory to the NMA and only disputes between parties to the NMA can be submitted to arbitration. Shelly & Sands also argues that the NMA terminated, pursuant to its own terms, upon completion of Shelly & Sands' work at the Power Plant and, alternatively, that both Shelly & Sands and the Teamsters expressly terminated the NMA many months prior to the occurrence of the events which gave rise to the class action grievance. Shelly & Sands acknowledges that it took the actions cited by plaintiff as evidencing Shelly & Sands' continuing intent to be bound by the NMA, but points out that it did this for only ninety (90) days after receiving notice from the NMAPC of the Teamsters' intent to terminate the NMA. (Answer, ¶ 8.)

1.      **Whether Local 377 has standing to sue**

Shelly & Sands argues, without a single citation to any authority, that the amended complaint must be dismissed because Local 377 is not a signatory to the NMA and, assuming the NMA were still in effect, only disputes between parties to the NMA could be submitted to arbitration.

Plaintiff urges the Court to reject this argument because, under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), as "a labor organization representing employees in an industry affecting commerce[,]" it is entitled to bring suit "in any district court of the United States having jurisdiction of the parties[.]" Plaintiff misconstrues § 301. Although § 301 establishes a cause of action and indicates the proper venue for such action, it cannot confer standing where it does not already exist in an individual case.

"[A] district court does not have subject matter jurisdiction over a non-signatory to a collective bargaining agreement, where no rights or duties of the non-signatory party are stated in the terms and conditions of the contract." *Serv., Hosp., Nursing Home & Pub. Emps. Union, Local No. 47 v. Commercial Prop. Servs.*, 755 F.2d 499, 506 (6th Cir. 1985).

Although Local 377 is not an actual signatory to the NMA, the NMA does provide as follows: "The Employer [Shelly & Sands] recognizes the Union [the Teamsters] herein as duly constituted for the purpose of bargaining collectively and administering this [NMA] *for the members affiliated* with International Brotherhood of Teamsters." (Doc. No. 4-1, Art. I, ¶ 14, emphasis added.) Local 377 is affiliated with the Teamsters. (Lesicko Decl. ¶ 3.) Therefore, the Court concludes that Local 377 does not lack standing to assert the rights of its Teamster members under the NMA.

### 2. Whether Shelly & Sands has a continuing obligation to arbitrate

In resolving the cross-motions for summary judgment, the Court does not address the merits of the underlying class action grievance which plaintiff seeks to arbitrate. At this juncture, the issue before the Court is whether or not the NMA was still in effect at the time of the actions which led to the grievance and, importantly, whether the answer to that question is for the Court or for an arbitrator to decide.

"It is well established that a party is not obligated to arbitrate a labor dispute unless it has contractually agreed to do so." *Int'l Ass'n of Bridge, Structural, and Ornamental Iron Workers, Local Union No. 44 v. J&N Steel & Erection Co.*, 8 F. App'x 381, 385 (6th Cir. 2001) (citing *Litton Financial Printing v. N.L.R.B.*, 501 U.S. 190, 200 (1991); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "[W]hether

8

or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract between the parties." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964) (internal quotation marks and citations omitted).

It is equally clear that, where a contract contains a broad arbitration clause, "there is a presumption of arbitrability," *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986), even with respect to the matter at issue here, namely, contract duration. "[B]ut this 'presumption in favor of arbitrating disputes over contract duration can be overcome by a clear showing that the parties intended for the underlying contract to expire, or separately agreed to terminate it, before the relevant dispute arose.' " *Sheet Metal Workers' Int'l Ass'n v. United Transp. Union*, 767 F. Supp. 2d 161, 173 (D.D.C. 2011) (quoting *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 763 (D.C. Cir. 1988)). The parties have made no reference to the terms of the NMA addressing arbitration and/or grievances. Even more notably, they have not discussed whether the NMA has a broad or narrow arbitration clause.

The Court has independently reviewed the NMA and notes that there is an arbitration process set forth in Article I; this process, however, is used only "for the resolution of jurisdictional disputes[]" in instances where a plant owner awards work to a signatory employer that is also within the recognized and traditional jurisdiction of another union with which the signatory employer has a similar agreement for the performance of that work. (Doc. 4-1, Art. I, ¶¶ 2, 6.)

A separate article of the NMA, Article VI, deals specifically with "Grievances." It provides a five-step procedure, concluding in binding arbitration before the American Arbitration Association. This procedure is used for "[g]rievances, other than those pertaining to jurisdiction

9

or general wage rates on any work covered by this [NMA.]" (*Id.*, Art. VI, ¶ 1.)[11] Article IV, ¶ 1 provides that the NMA "covers all work assigned by the Owner to the Employer and performed by the employees of the Employer covered by this Agreement."

 Article XXII deals with "Lockout and Work Stoppage" and provides that if "a local or area collective bargaining agreement expires and a subsequent work stoppage ensues, the Employer and his employees will continue to work since the intent of this provision is to allow maintenance work to continue as a benefit to the client. The wages and fringe benefits, in the expired local collective bargaining agreement or as approved by the NMAPC, Inc. will remain in effect for all work covered under the terms of this [NMA] until wages and fringe benefits are agreed upon and become effective for the recognized bargaining agency of the local contractors and the affected Union." (Art. XXII, ¶ 2.) When a violation of Article XXII is alleged, a party to the NMA or the NMAPC may invoke an arbitration procedure using a "permanent arbitrator." (*Id.*, ¶¶ 8 through 8i.)

 Finally, Article XXII, ¶ 9, provides: "The procedures contained in Section 8 through 8i, shall be applicable to alleged violation of this Article. Disputes alleging violation of any other provision of the [NMA], including any underlying dispute alleged to be in justification, explanation or mitigation of any violation of this Article, shall be resolved under the grievance adjudication procedures of Article VI."

 None of the above articles seems to address how to resolve a dispute over the *duration* of the NMA itself. Even assuming, however, for purposes of the instant motions, that the NMA has a broad arbitration clause, raising a presumption that the issue of contract duration is itself subject to arbitration, it is still for this Court to determine whether Shelly & Sands has

---

[11] It is this article that was invoked by the plaintiff in filing the underlying grievance.

met its burden to overcome such presumption by " 'a clear showing that the parties intended for the underlying contract to expire, or separately agreed to terminate it, before the relevant dispute arose.' " *Sheet Metal Workers' Int'l Ass'n*, 767 F. Supp. 2d at 173 (quoting *Nat'l R.R.*, 850 F.2d at 763).

In this case, the alleged actions of Shelly & Sands that led to the grievance plaintiff now seeks to have processed occurred in April 2010. By that time, Shelly & Sands, by use of the NMAPC online termination system in July 2009, had already indicated its intent to terminate the NMA because the project that required the NMA had been completed. Admittedly, it is not clear whether the plaintiff ever accepted that termination request. However, the Teamsters itself notified Shelly & Sands in August 2009 that it had terminated the NMA due to Shelly & Sands' failure to pay the required administration fees,[12] and a subsequent audit of the Pension Fund confirmed that the Teamsters considered the NMA terminated as of August 2009. Therefore, the record shows that the NMA had already terminated by April 2010 and, therefore, Shelly & Sands had no obligation to process a grievance.

Plaintiff argues, however, that Shelly & Sands' post-termination behavior demonstrated an intent to continue to be bound by the NMA. "It is well established that a collective bargaining agreement is not dependent on the reduction to writing of the parties' intention to be bound; rather, all that is required is conduct manifesting an intention to abide and be bound by the terms of the agreement." *Salisbury v. Kroyer Heating & Air Conditioning*, No. 87-3446, 1988 WL 28801, at *2 (6th Cir. Apr. 5, 1988) (citing *Gariup v. Birchler Ceiling &*

---

[12] Article XXVI provides for the assessment of administrative fees. Under ¶ 3 of that article, if an employer fails to remit the fee after demand of timely payment, "the Employer consents to the jurisdiction of the courts of the Commonwealth of Virginia in any action brought by the [NMAPC] to collect the fee." There is no suggestion in the record that the NMAPC ever brought an action in Virginia to recover Shelly & Sands' unpaid administrative fees.

*Interior Co.*, 777 F.2d 370, 373 (7th Cir. 1985); *NLRB v. Haberman Constr. Co.*, 641 F.2d 351, 355-56 (5th Cir. 1981)).

Shelly & Sands does not deny the post-termination behaviors identified by plaintiff, but asserts that it engaged in those behaviors for only ninety (90) days after the termination (Answer ¶ 8)[13] and that it did so in light of the fact that the NMA could only be terminated on 90-days' notice. (*See* Doc. No. 4-1, Art. XXIX.) Therefore, although notice of termination was confirmed by the Teamsters in August 2009, Shelly & Sands believed it had a duty to abide by the contract for another ninety (90) days. This, in its view, does not demonstrate intent to be bound beyond that ninety (90) days. *See, e.g., Dugan v. R.J. Corman R.R. Co.*, 344 F.3d 662, 668-69 (7th Cir. 2003) (employer's contributions to pension funds after termination of the collective bargaining agreement did not constitute a continuation of the terminated collective bargaining agreement); *Trs. of Painters Union Deposit Fund v. Interior/Exterior Specialists Co.*, No. 05-70110, 2007 WL 951413, at *9 (E.D. Mich. Mar. 27, 2007) ("continued contributions may not even have been voluntary, and if they were involuntary they certainly were not an acknowledgment of a contractual obligation"); *Elrod & Sons, Inc. v. Dist. Council No. 3 of the Int'l Bhd. of Painters & Allied Trades, AFL-CIO, CFL*, 744 F. Supp. 910, 915-16 (W.D. Mo. 1990) (once a party "manifests an intent to void or repudiate a collective bargaining agreement, subsequent payments of fringe benefit contributions for union employees do not rebind the employer to the collective bargaining agreement"); *Fisher v. Copeland Refrigeration Corp.*, No. 4255, 1973 WL 1029, at *6 (S.D. Ohio June 4, 1973) ("The fact that the employer chose [after the expiration of the collective bargaining agreement] not to change many of the working

---

[13] Without any evidence in support, plaintiff asserts that "Shelly & Sands continued to honor the terms and conditions of the NMA through April, 2010." (Doc. No. 23 at 6; Lesicko Decl. ¶ 8.)

conditions which had prevailed under the expired agreement does not tend in any way to establish that that agreement was, or was considered to be, or was treated as still effective.").

Plaintiff alleges that defendant employed members of Local 377 after August 28, 2009 and paid wages and benefits; defendant does not deny this, asserting that, under the terms of the NMA, it made payments for 90 days after the termination of the NMA. However, plaintiff also alleges that defendant continued honoring the NMA up until at least April 19, 2010. Plaintiff has the burden of proof and it has pointed to no evidence in the record to support its bald assertions, even though it filed the declaration of its Secretary-Treasurer, who surely was in a position to provide documentary evidence to support the assertions. On the contrary, defendant denies employing any Local 377 member or making any wage or benefit payments beyond the 90-day period required by the NMA. The affidavits of former Local 377 members, Eugene Kelson (Doc. No. 17-1 at 154-157), Gary Young (*id*. at 158-60), and Shelley Garner (*id*. at 161-64), state that they were invited by Shelly & Sands in April 2010 to "come back to work . . . at the beginning of the 2010 work season[,]" provided they join one of the unions with which the company had a contract, which did not include the Teamsters. These affidavits, coupled with plaintiff's lack of proof to the contrary and Shelly & Sands's denials, are sufficient to establish that Shelly & Sands did not employ Local 377 members other than during the 90-day period following the August 2009 termination of the NMA and, therefore, was not required to process the April 20, 2010 grievance.

Accordingly, the Court concludes that the record clearly reflects the intent of both Shelly & Sands and the Teamsters to terminate the NMA, at the latest, ninety (90) days after August 28, 2009. Because the events underlying the class action grievance took place in April 2010, Shelly & Sands had no obligation to process the grievance.

13

### III. CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment (Doc. No. 19) is **DENIED**. Defendant's motion for summary judgment (Doc. No. 17) is **GRANTED**. This case will be dismissed by separate judgment entry.

**IT IS SO ORDERED**.

Dated: August 20, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

14